May it please the Court, I'm Chris Ibarra, on behalf of Appellants Montebueno Marketing, Sabroso Foods and Young Young C. I'd like to limit my opening statement to about 10 minutes and reserve about 5 minutes for rebuttal. And the points I'd like to address include comity, the last in time rule, the effects of the last in time rule, waiver by the appellees, and the money judgment that my clients obtained is within the public policy of the state and the federal courts. And if I have time, I'd like to speak about the abuse of discretion in the lower court and that the motion to augment is still pending before you. The appellants decided to enforce the money judgment from the Philippine Regional Trial Court, which resulted from the Philippine Supreme Court judgment in 2001, allowing the litigation in the Philippines to proceed. Let me see if I have the basic scenario straight. The question of enforcing the arbitration clause comes up before the Northern District of California. And the district court enters an order enforcing the arbitration clause and directing the case to arbitration. An appeal is taken from that to this court, but the appeal is dismissed without prejudice. Subsequently, your client obtains a decision from the Philippine Supreme Court, reaching a different conclusion with regard to arbitration. Subsequently, a judgment is reached by the regional court in the Philippines. You come to the Northern District of California to try to enforce that judgment. And the Northern District of California says, well, we've already ordered this claim to arbitration, so we're not going to enforce the judgment. Now, why should the Northern District disregard its own earlier order in preference for another court that you decided to go to afterwards? Well, a couple of things, Your Honor. The withdrawal of the dismissal of the appeal before this Court had language about possibly reinstating it. And it was never reinstated, right? Because the conditions. No, no. Answer the question yes or no. Was the appeal ever reinstated? No, it was not. So as far as the Northern District is concerned, its prior order is still in effect. Well, it was a judgment, but there's a later judgment in the Philippines of which the appellee participated. But I'm asking you, why is it the Northern District should disregard its own order? I mean, why doesn't that encourage a party that loses in San Francisco to find another place to file a lawsuit, they get an order they like better, and they come back to San Francisco and say, disregard your first order. I like this one better. Why should San Francisco say, okay, I'm fine with that? Well, Your Honor, the complaint to enforce the judgment is based on California law. There's no Federal statute, so we look at California law. And that gives it even more reason for the court in San Francisco to say, I should pay attention to what I'm doing, not what the court in Manila is doing. Well, you know, the Philippine courts, in essence, acted consistently with the California Code of Civil Procedure 1281.2c. I'm still waiting for a reason why the California court should disregard its own order and decide that it's been trumped by what's happened in the Philippines. Because it has a law that allows determination of having this tried in court if there was a possibility of multiplicity of suits, which occurred in this case. Because there are other parties other than Del Monte and Montalbano who are not parties to the arbitration agreement. Well, I look at the judgment that you're trying to enforce, and it appears to run against Del Monte, period. It was done that way because the at some point Del Monte withdrew in 2004. It withdrew after litigating in the Philippines for eight years. Well, that doesn't tell me why the California court should pay attention. This is the judgment against Del Monte. The California court has already said, Del Monte, that's subject to an arbitration clause, go arbitrate it. Why should the California court disregard its own earlier order? Because of the lasting time rule, Your Honor. And so you decide that it's okay, if you don't like the results from the northern district, it's okay to go to any other court, get a judgment you like, and as a result, the California court should roll over. I see. That makes no sense to me whatsoever. CCP 1281.2C allows for that. Counsel, let me ask you a question. Why are you in you have a judgment in the Philippines, and your argument is, well, two of the defendants were not signatories of the arbitration agreement. But when you come to enforce your judgment, you don't seek to enforce your judgment as against the non-signatories alone. You also seek to enforce your judgment against a party who has prevailed on arbitration proceeding, and the court has upheld that decision to arbitrate. If your defense is these people are not signatories, why aren't you just filing an action to enforce the judgment as to just the defendants that weren't signatories to the arbitration agreement? Because a few things, Your Honor. There actually was a third defendant. Dewey was another defendant who was not signatory to the arbitration agreement. I'm sorry, from Old Derby, Dan Collins, and Lucy Dowdell. Why didn't you seek enforcement as to just those defendants in the Philippine proceeding? According to the default judgment, the default judgment was entered against Del Monte. Yeah, I know. But you don't have to. Are you saying that when you come to enforce your judgment in California, you're required by the California rule to seek enforcement as against all the defendants? Why couldn't you just sought an enforcement of the judgment as to the defendants that weren't subject to or that might not have been subject to the arbitration decision? Because it was a default judgment. It was based on the complaint filed by the plaintiffs in the case in the Philippines. And they were limited into what they can get, because Del Monte withdrew six years before. I don't have a question, but go ahead. Is there a requirement that when you seek enforcement of this foreign judgment that you seek enforcement against everybody that you have a judgment against? Or can you just seek a judgment just against those people that wouldn't offend the previous arbitration order? It's not so much that you are. There's no requirement, first of all, to seek judgment against all the defendants. If three of your children did something wrong, do you have to spank all three of them or do you have a choice to just spank two of them? Well, we have the joint and several liability theory here, Your Honor. So we spank one for the wrongs committed by the other two? It's not that. It's the default judgment in the Philippines is based on the complaints filed by the plaintiffs there. Well, the judgment in the Philippines. Because Del Monte had withdrawn. The judgment in the Philippines, I'm reading it. It appears to be only against Del Monte. Yes. So the only party you have a judgment against is the same party that got an order from the California court saying go to arbitration. There are actually other. No effort to enforce a judgment against the additional parties that were the basis for the Philippines Supreme Court decision, is there? I don't think that's what happened, Your Honor. If you look at the complaint, it wasn't asking for money alone. It was asking for some equitable. Well, I'm looking at the judgment issued by the court in the Philippines. And the bottom line of it is there's rendered in favor of plaintiffs ordering defendant Del Monte Corporation USA to pay the plaintiffs the following. I don't see anything else in that judgment. What is it you're trying to enforce here in California? There were prior orders issued by the courts in the Philippines as to Dewey and as to the trademark or service mark of Del Monte, which my clients prevailed on. They were able to use the Del Monte mark in the Philippines. Is that what you're trying to enforce in the current action? There was no need to because the deal was over. Okay. So I don't care about those. I care about only what you're here in front of us about. And that appears to be simply a money judgment against Del Monte. Yes. And the lasting time rule allows for us to do that. No, that's a conclusion. But you've got to take it step by step to get to the conclusion. And the problem I'm having with your argument, I think it's the same problem my brother is having, is your justification for proceeding with the litigation in the Philippines was we were trying to go after individual defendants who were not signatories to the initial marketing agreement and, therefore, could not be compelled to arbitrate. Yet you didn't obtain a judgment against anything other than the corporate defendant, Del Monte, which clearly violates the arbitration order that was entered by the Northern I don't know what happened to the individuals, but your judgment doesn't even mention them. So there's nothing to enforce against them. So you're now back in front of us making a completely contrary argument to why we should recognize the Philippine judgment and why it was okay for you to litigate in violation of the federal court's arbitration order. And you want us to approve this whole thing. Well, the lawsuit we have here, as well as the lawsuit in the Philippines, required Del Monte to raise the judgment of Judge Jenkins in 1999. But they did. They did. I mean, I read their petition to the Philippine Supreme Court. They clearly told the Philippine Supreme Court. It's not enough to tell it, Your Honor. There's a petition in San Francisco that says this should be arbitrated. They were required to argue. In the cases we have here in Reschia di Carte. Is it listed in the brief? Is that not an argument? It's not. There are rules in the Philippines similar to the rules that we have here under FRCPHC, I believe, Your Honor. You have to raise Reschia di Carte and collateral estoppel. He cited the Philippine ---- It's not Reschia di Carte. It's an order of the court directing the parties to arbitrate. That's not a judgment that would normally be recognizable. And I have questions for Mr. Wilka about why Del Monte did not seek to initiate contempt proceedings against your clients in the Northern District of California and obtain a restraining order to enjoin them from proceeding with litigation before the Philippine courts. But we'll get to that in a minute. Well, it's part of our argument that, you know, we cited to you the April 7, 2000 order of this Court where it allowed Monte Gwendolyn to come back here to reinstate him. But you didn't. They didn't see a reason to. They were winning in the Philippines. Well, fine, but the fact that you could have done something and didn't doesn't mean we should pay attention and assume that you did. I mean, you didn't. So all the Northern District has is an order that says go arbitrate. And I'm looking at ---- let me put it this way. Can you give me any authority where a court that self-issues an order based on this last-in-time rule decides that some other court ---- well, some other court decided differently, so I'm going to adhere to the some other court. We don't have two competing courts from the outside. The first order comes from the Northern District, the very same court that you went back to. And why should that court be expected to disregard its first order in favor of what  Because Del Monte litigated in the Philippines. Well, that's your waiver argument. That's something different. I want to see if you have any authority, because I haven't found any, that supports your last-in-time proposition when the first order was issued by the very same court you've come back to. I haven't found any authority of that nature. We cited the TLS case to you decided in New York. We cited the Fifth Circuit cases, the Donald case and the Garten-Silber case. In any of those cases, the first-in-time, last-in-time competition was the first order issued by the very same court that you've come back to. I'm not sure, Your Honor. You know, I'm not sure. But, you know, the Filsac case that we cited to you required Del Monte to argue res judicata and did not. It participated in litigation in the Philippines. You've tried that argument with us before. You better – you don't have much time left. Do you want to save some time for rebuttal, because you're not making a lot of headway on this? Okay. Okay? All right. Let's hear from the other side. William C. Wilka, Jr. Good morning, Your Honors. May it please the Court. I am William C. Wilka, and I represent the defendants and the respondents in this matter. And I think that the focus of this Court, assuming that there's a de novo review of a dismissal under either Rule 12b-6 or Rule 56, would be the same place where the focus was for the district court, which is that under California Civil Procedure Code of Section 1716C, that applicable controlling law requires the court to enforce an arbitration agreement and not to recognize a foreign judgment. Okay. So why did you drop the ball? I don't understand why you didn't immediately go back to Judge Jenkins as soon as they started to crank up the proceedings in the Philippines and move for the issuance of an order to show cause and sanctions and injunctive relief, and you didn't do that? Your Honor, there is nothing in the record that would respond to that question. And I hesitate to go beyond the record to explain why I know what other lawyers did. I don't want you to do that. But the conundrum that that puts us in, or actually it puts you in, is that you waived. The waiver question. By letting years go by and doing whatever it was that you did in the Philippines. And, I mean, I could understand, based on what I saw in the record, why Del Monte might have thought, well, we've got a shot in the Philippine Supreme Court if we tell them about the San Francisco arbitration order to get the Philippine Supreme Court to say we're not going to touch this case because the federal court in San Francisco is going to force the parties to arbitration. But you lost on that argument. And that's at the point, I guess the last point, I would think, where you should have immediately hightailed it back to Judge Jenkins and cranked up contempt proceedings. Your Honor, what I would point to that is in the record is, first of all, that Del Monte's litigation activities in the Philippines were directed solely to the arbitration clause. And obtaining this not being a false judgment. Well, we don't know that. And the record is a problem there. But there was apparently a period of time. The Philippine Supreme Court decision was, what, 2001 or 2002? 2001. And we're told that there was a point in time in 2004 that Del Monte instructs counsel in the Philippines to withdraw from the litigation. And then the Philippines judgment doesn't come out until, like, 2010. So this is a slow-moving process. But it's not that it's – and it may be that we just need factual development. It's not that Del Monte pulled out immediately after the Philippine Supreme Court decision, but then failed to go back to Judge Jenkins. Something else has happened. And I guess what concerns me here is the district court did not address the waiver question or argument in its order. Now, the way the proceedings happened in front of the district courts, I can sort of understand that, because it started as a motion to dismiss. And the waiver argument was put in somewhat hypothetical terms by the plaintiff, but it's a motion to dismiss. So you don't present facts there. It got converted to a summary judgment with the apparent consent of the parties. But there wasn't discussion of the fact that, well, this waiver question may require us to get into the specifics of what happened in the Philippines and what Del Monte may have done. I mean, it's said, and I don't know that it's supported by the record, but it's said that Del Monte files an answer and a counterclaim in the Philippines, activity beyond the Philippine Supreme Court. So we have all this hanging out there. Why shouldn't the case at least be remanded to the district court to speak to the question of waiver, since it was apparently put on the table but not addressed as part of its order? Your Honor, a couple of responses to that. First of all, the district court did ask counsel for both parties if there was additional evidence to be developed and to be submitted. And counsel from both parties said, no, there is not. So on that basis right there, the district court was entitled to proceed to rule on the motion as a motion for summary judgment without concern, if you will, for a hypothetical waiver argument. If that had been a real argument, it could have been stated at the time that we want to develop that. Kennedy. If you were the movement for dismissal, whether you take it under a dismissal standard or a summary judgment standard, wouldn't it be your burden to show that on the facts that you were entitled to it if there is a question about waiver? Your Honor, on the facts that were presented in the complaint, the motion was, I believe, correctly based on 1716.C and dismissal as a matter of law under the applied medical and gallow cases. Let me ask you another question. Related to waiver but on a different level, would you explain to me, perhaps in the record, and I missed it, I apologize, but usually when you have an order to arbitrate, the arbitration agreement has some provisions about what the parties do. They name, they exchange names, how to pick an arbitrator, whether it's going to be an American Arbitration Association, all these kind of things. So even before you go to contempt, you start the process by which the arbitration agreement, the process contained in the arbitration agreement, was there anything in our record or was anything done to show that that process was even attempted or started by Del Monte? Your Honor, there is nothing in the record to address that specifically. The terms of the arbitration agreement, so we don't even know whether if, apart from the question of continuing to be litigating the Philippines, we don't know whether anything had been set in motion to enforce the arbitration, not just contempt, but to actually enforce the arbitration order. Your Honor, there was nothing done to do that. And I want to return to Judge Clifton's question because I believe that there was a second reason that the waiver argument would not apply, and that is waiver being a knowing voluntary release of a known legal right. There was nothing in the record presented by the appellants to suggest that that is the case. And, in fact, in this case, the order of the district court in 1999 did become a judgment of that in the Philippines simply to ask for recognition of the arbitration agreement in order to avoid a default judgment. Apparently, with the judgment of counsel at the time, that that was the sufficient activity to protect Del Monte. And then we have a huge case of years where nothing happened. I can understand staying in the Philippines Supreme Court. It is said to us that there was activity, including affirmative activity, by Del Monte after that. Well, the record is bare, and I understand your argument that, look, the burden is going to be on the plaintiff to establish a prima facie case of some kind. But the way this district court proceeding got converted from a motion to dismiss to a summary judgment makes it not hard for me to understand that somehow that whole waiver question fell off the table. Do you happen to know whether it's true that Del Monte continued with some activities in the Philippines after the Philippines Supreme Court decision? Your Honor, Del Monte, to the best of my knowledge, continued with, in the Philippines with a motion for reconsideration to the Supreme Court. That was denied. And Del Monte apparently, what I understand from the record, received or was on the proof of service list from the court and received some notice from the court that they were going to take some further action. And Del Monte, as counsel pointed out, instructed its counsel to withdraw in the Philippines because it believed it had a valid enforceable judgment in the district court. Three years later, after the Philippines Supreme Court? That was after Del Monte received notice that the intermediate court or the trial court was going to begin operations again. I don't understand Philippine civil procedure, but I thought it was after the plaintiffs had filed their opening trial brief or whatever the pleading was, and it was at that point, rather than respond to whatever it was the plaintiffs had filed, Del Monte instructed Philippine counsel to withdraw. That's what I, am I correctly understanding? Your Honor, I don't know that the record goes that far, but. Well, I didn't make it up, counsel. No, I understand. If I know it, it's because of something I read in the record. Right. And I believe that may be in the papers that appellants provided in their motion to augment and supplement the record. I believe that's where that was. And Del Monte instructed counsel to withdraw. There had been a two to three-year delay already with apparently nothing happening. Del Monte, having a judgment in the northern district in his favor, apparently drew a reasonable inference that there's nothing to do in terms of seeking some sort of sanction in the district court or injunction in the district court. And then there's this gap in time until 2010 when there's a judgment, which only brought to our attention in 2011. I mean, I guess we're back to the waiver question, which I think is a problem for Del Monte. Once it knew that the Philippine Supreme Court was, had rejected your argument that this had to be arbitrated, why shouldn't the doctrine of waiver be invoked by virtue of the fact that Del Monte did nothing to protect the judgment from the northern district of California and allowed the Philippine proceedings to continue at whatever pace they move in the Philippines? Your Honor, I think that had appellants raised a waiver argument in the northern district, for example, and said that Del Monte's activities in the Philippines up to that point constituted a waiver. And then the northern district in 1999 could have considered that. And, in fact, the northern district did make a reference to that potential argument and said that that's not the case. Once judgment has been entered here, I don't believe that the failure to take further  action in the northern district of California should be considered a waiver. If that had occurred prior to the judgment, I would understand the question. I think what you just argued was that they waived the waiver argument. Is that what I heard you saying? That Montebueno waived the waiver argument? Against Del Monte.  Failing to pursue it before the northern district. That's where it should have been pursued. If it was going to be pursued, it was in the northern district. It was identified in the opposition to the motion to dismiss. Yes. It was identified in what I described as hypothetical terms. That's correct. But in an opposition to a motion to dismiss, you don't customarily present evidence. I think the problem develops when the conversion happens to summary judgment with the consent of both sides. And so I take it your argument really rests on the contention that at that point it was plaintiff's obligation to say, we have this objection based on waiver, either we need discovery or we need the opportunity to present evidence, or there is this evidence in this whatever the record consisted of at that time. There was no discussion of waiver at the heat. I looked at the transcript and I didn't see any discussion of waiver. So waiver really wasn't sitting on the table. It was just lurking out there. And so I take it it's your position that at that point it's plaintiff's obligation to come forward, it doesn't, so it can't come forward now. Yes, Your Honor, that's correct. But even somewhat more than that, the trial court in the northern district specifically asked if there was any more evidence to be adduced, any more arguments to be brought that would require her not to convert to Rule 56 motion, and counsel for both parties said there is no more evidence. What considerations are allowed under the California statute involved to refuse assuming we have a valid Philippine judgment, there's no problem there. The problem is, as I see, what kind of discretion does the judge have that notwithstanding a judgment may be proper, that it can still not be enforced? What provision in the California statute, if there's an alternative way under the law to decide this question under the statute, do you have one? Yes, Your Honor. I believe that the arguments that we did address in our responding brief, or answering C-5, the arbitration argument, that we also raised, and it would have been a proper basis for that court to uphold our argument, as well as for this court, that the failure to follow the forum selection clause is, as a matter of law, would be error in the Ninth Circuit under the applied medical and the Gallo cases, and that the failure to apply California's substantive law under the Shirk case by the U.S. Supreme Court. That also would be an error of law not to do so. And the complaint in the Philippines was under the California statute, such that the judgment wouldn't have to be enforced, notwithstanding that it was, let's say it's a valid judgment, but which judgment is a valid judgment? The Philippines, in their own sovereign, their own way, they decided that's a valid judgment. Okay. The question is, can that judgment be enforced here? Is that correct? And that's subject, in this case, to the California statute. Correct. And the answer to that question, Your Honor, is a very direction-specific no, that under the applied medical case and the Gallo case, that the district court's exercise of discretion requires the court to enforce the private agreements between the parties, because that agreement is the law of the contract. And so I believe I'm out of time, Your Honor. We're far over time, and we have your argument in mind. Thank you. I think you have a little bit of time left. Thank you. Thank you, Your Honors. The last-in-time rule doesn't give preference to whoever gave the decision. In response to your earlier question, I think you can keep hanging your hat on the last-in-time rule, but what's your response to Code of Civil Procedures, Section 1716c5? It specifically says that one of the factors that the Court may consider in refusing to recognize the foreign judgment is that the proceeding in the foreign court was under which the dispute in question was to be determined otherwise than by proceedings in that foreign court. Isn't the order to arbitrate directly applicable to that provision? No, Your Honor. Again, Code CCP, Section 1281.2c, you know, California courts allow digression from arbitration agreement where there's a possibility of multiplicity of suits. And it clearly states that. And this is actually what the Supreme Court in the Philippines decided and followed, you know, not just with this case, not just with the Salas case, but in another case that involved Dole, Cyr Bemko v. Dole, they decided in 2009, the Philippine Supreme Court decided that as well. Let me ask you, let me rephrase the question. If there is an agreement between the two parties involved here, that their dispute is going to be arbitrated, and on top of that, you have forum selection clauses and other clauses, and one of those is actually determined by a United States court, that there is an agreement between them to arbitrate their dispute, why wouldn't this judgment not have to be enforced under the California statute because enforcement would be contrary to a particular agreement that exists between the two parties? That's exactly what happened in the Henley case that we cited on page 17 of our opening brief, California decision, then a Washington decision, and then back to California. And the Court saw problems in the earlier of it. The case that you cited in your brief is dispositive, is your argument? Yes, Your Honor. And the ---- Let me ---- you're over time, but I'll ask the colleague's indulgence to ask you to speak to the waiver question. And that is the question I just identify. It is the position, among other things, of Del Monte that it was your obligation to raise to the district court the need to present or the opportunity to present evidence with regard to what happened in the Philippines such that Del Monte should have been deemed to waive the right to arbitration. There is nothing in the record that I find that supports the argument. Your papers argue that Del Monte did more such that it should be deemed to be waived. Well, did you waive that by not telling the district court or presenting that evidence to the district court? No, Your Honor. Why not? It was argued by Mr. Benitez. What evidence in the record is there of anything that Del Monte did after the Philippine Supreme Court decision? It's the reason why we sought to leave to file a motion for reconsideration. Because Rule 12d requires all parties must be given reasonable opportunity to present all material that is pertinent in the motion. Did you present that material to the district court with your motion for reconsideration? We couldn't because we had to ask for leave, and they denied the leave. We haven't filed a motion for reconsideration because they denied it. Before we go back to the reconsideration motion, I thought the district court at the time, converting the 12b-6 motion to a Rule 56 motion, do both parties concur? And everybody said, yeah, that's fine with us. And then the court offered or asked, is there additional evidence that you would like to submit? And the response was no. That's not what the magistrate said. She asked whether any of the facts were disputed, and there were no facts to dispute. She didn't ask for more documents to be presented. We were lulled again by her listening to the argument of the last-in-time rule, and she didn't make any comments on it. But, I mean, it can't come as a surprise to you, you're now back in Federal court, you know there's an order to arbitrate, I mean, why wouldn't you argue waiver the first time you get before the magistrate judge? We're not allowed to under a motion to dismiss. We're not allowed to bring in extensive evidence. If she converts it to a motion for summary judgment, why wouldn't you then say, well, Your Honor, you should not recognize, or you should, in essence, vacate, I guess, or ignore the order to arbitrate because Del Monte waived it by litigating in the Philippines? She was required to give us reasonable notice, and she didn't. We cited the Magvers' South Bay Beer case. It's an obligation to then object and say, no, Your Honor, we don't want it converted to a summary judgment motion today. We need to conduct some additional discovery if you're going to rule on summary judgment. Rule 12D doesn't require that, you know. I'm talking about 56 now. Right. If she asks, I'm going to convert this to summary judgment, anybody object? No? Everybody says that's fine. She was also wrong in her decision under the 7-9. All right. Well, I think we have your arguments in mind, and I think you understand what is troubling us. Yeah. So we'll puzzle our way through it and get to you. Thank you, Your Honors. The case that's argued is submitted.
judges: Benavides, Tallman, Clifton